# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

CHRISTOPHER SHAW,
  *Plaintiff*,

  v.

FRANCO, *et al.*,
  *Defendants*.

No. 3:17-cv-00887 (JAM)

## INITIAL REVIEW ORDER

Plaintiff Christopher Shaw is a prisoner in the custody of the Connecticut Department of Correction. He has filed a complaint *pro se* and *in forma pauperis* under 42 U.S.C. § 1983, against Lieutenant Franco and five John Doe defendants. Based on my initial review pursuant to 28 U.S.C. § 1915A, I conclude that the complaint should be dismissed on the ground that it fails to state any plausible grounds for relief.

## BACKGROUND

The following allegations from plaintiff's complaint are accepted as true for purposes of the Court's initial review. On January 31, 2006, plaintiff was transferred to MacDougall Correctional Institution. Plaintiff told a correctional officer that the person who murdered plaintiff's mother and who set fire to plaintiff's home—nearly killing plaintiff—was housed at MacDougall. Plaintiff was told that he would not cross paths with that person again, and that the information would be put in plaintiff's master file. Doc. #1 at 5.

Plaintiff was later transferred to Osborn Correctional Institution. On July 21, 2014, Lieutenant Franco issued plaintiff a "ticket," or disciplinary report. While plaintiff was housed in the ticket block, defendant Franco told plaintiff that "[if] you want to be an ass-hole I will send you to a jail you do not want to be at." *Ibid*.

On August 18, 2014, plaintiff was transferred back to MacDougall. Plaintiff told intake officer Doe #3 that the person who murdered his mother and almost killed him was housed at MacDougall. Defendant Doe #3 went into the office. When he returned, he told plaintiff to sign papers necessary for staff to take property that was not permitted at MacDougall. After plaintiff signed the papers, defendant Doe #3 sent plaintiff to the ticket block. Plaintiff assumed that the other person was no longer at MacDougall. *Id.* at 6.

Months later, plaintiff was moved to M-1 pod, where he saw the other person daily. He told defendant Doe #5, who was a lieutenant or captain, about this person. Defendant Doe #5 simply said "okay" and walked off. In response to seeing the other person every day, plaintiff lost weight and became depressed. He had dreams about the fire, which prevented him from sleeping. *Ibid.*

At some point, plaintiff and his cellmate were handcuffed, taken to segregation, stripped, and put in the same cell. No one would tell them why they were in segregation. On February 27, 2015, plaintiff went on a hunger strike, in an attempt to be transferred out of MacDougall. *Ibid.*

Plaintiff names six defendants: Lieutenant Franco, Director of Offender Classification John Doe #1, Population Management John Doe #2, Correctional Officer John Doe #3, Second Shift Commander John Doe #4, and Lieutenant or Captain John Doe #5. He requests relief for "mental and emotional as well as physical injury." *Ibid.*

## DISCUSSION

Pursuant to 28 U.S.C. § 1915A(a), the Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. The Court must accept as true all factual matters alleged in a complaint, although a

2

complaint may not survive unless its factual recitations state a claim to relief that is plausible on its face. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014) (same). Nevertheless, it is well-established that "pro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

### *Deliberate Indifference to Safety*

Plaintiff appears to contend that defendants were deliberately indifferent to his safety by housing him at MacDougall. Prison officials have a duty to make reasonable efforts to ensure inmate safety. To establish a constitutional violation, a plaintiff must show that the conditions of his incarceration posed a substantial risk of serious harm and that prison officials were deliberately indifferent to his safety. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Where the claim is that defendants failed to protect plaintiff from harm at the hands of another inmate, the plaintiff must show that defendants knew of and disregarded an excessive risk to plaintiff's safety. *See id.* at 837; *Bridgewater v. Taylor*, 698 F. Supp. 2d 351, 358 (S.D.N.Y. 2010) (explaining that defendants must be aware of facts supporting an inference that harm would occur and must actually draw that inference).

Courts have found that prison officials are on notice of a substantial risk of serious harm where, for example, "there has been prior hostility between inmates, or a prior assault by one inmate on another, and those inmates are not kept separated." *Roman v. Semple*, 2013 WL 951728, at *1 (D. Conn. 2013). Courts have also found that correctional staff are on notice "when an inmate informs corrections officers about a specific fear of assault and is then

assaulted." *Beckles v. Bennett*, 2008 WL 821827, at *17 (S.D.N.Y. 2008). On the other hand, "communicating vague concerns of future assault by unknown individuals [is] not sufficient to impose liability on an officer who fails to protect an inmate." *Rivera v. New York*, 1999 WL 13240, at *9 (S.D.N.Y. 1999).

Plaintiff fails to state a plausible claim for deliberate indifference to safety. Plaintiff alleges that for several months he saw the other inmate daily. He does not allege, however, that the other inmate harmed him or threatened to harm him in prison. Despite his request for relief for "mental and emotional as well as physical injury," he does not allege facts to indicate that he was physically injured. Further, although plaintiff states that the other inmate killed his mother and set fire to plaintiff's home, he alleges no facts indicating whether the other inmate knew that plaintiff was in the home at the time or had any animus against him. Absent any facts suggesting that plaintiff's safety was in danger of serious harm by merely seeing the other inmate, plaintiff fails to state a cognizable claim for deliberate indifference to safety.

### *First Amendment Retaliation*

Plaintiff also alleges that defendant Franco told him, "[if] you want to be an ass-hole I will send you to a jail you do not want to be at." Doc. #1 at 5. Several weeks later, plaintiff was transferred to MacDougall. To the extent that plaintiff is attempting to claim that Franco retaliated against him in violation of the First Amendment, the facts alleged in the complaint fall short of stating such a claim.

Prison officials may not retaliate against inmates for exercising their constitutional rights. To establish a First Amendment retaliation claim, a plaintiff must allege facts showing "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the

adverse action." *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015). To satisfy the third

element, plaintiff must allege that the protected activity "was a substantial or motivating factor

for the adverse action taken" against him. *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003).

Although plaintiff alleges that he was transferred to MacDougall against his wishes, he does not

allege facts to suggest that he engaged in constitutionally protected speech or conduct, nor does

he allege that Franco (or any other defendant) transferred him in response to such activity.

### *Claims against John Does #1, #2, and #4*

In addition to the deficiencies detailed above, plaintiff names Does #1, #2, and #4 as

defendants but does not mention these defendants at all in his statement of facts. The Court

cannot determine the basis for plaintiff's claims against Does #1, #2, and #4. "It is well settled

that, in order to establish a defendant's individual liability in a suit brought under § 1983, a

plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional

deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). Because plaintiff

does not assert that John Does #1, #2, and #4 were personally involved in violating plaintiff's

rights, plaintiff's claims against these defendants are not cognizable under § 1983. Similarly,

plaintiff's vague claim concerning being placed in segregation does not identify any responsible

defendant.

CONCLUSION

In accordance with the foregoing analysis, the Court enters the following orders:

(1)     The complaint is **DISMISSED** without prejudice. Plaintiff may file an amended

complaint provided he can correct the deficiencies in his claims for deliberate indifference to

safety and/or retaliation. Any amended complaint shall be filed within **thirty (30) days** from the

date of this order.

(2)    If no amended complaint is filed by **July 14, 2017**, the Clerk shall enter judgment and close this case.

 (3)    If plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that plaintiff MUST notify the court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. Plaintiff should also notify defendants or counsel for defendants of his new address.

(4)    Plaintiff shall utilize the Prisoner Efiling Program when filing any amended complaint or any other documents with the court.

It is so ordered.

Dated at New Haven, Connecticut this 14th day of June, 2017.


/s/*Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge